# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

JAMES BARANOWSKI,

Appellant/Cross-Appellee,

v.

LISA L. TESH,

Appellee/Cross-Appellant.

No. 2D2024-1967

_____

July 22, 2026

Appeal from the Circuit Court for Pasco County; Brian Gnage, Judge.

Allison M. Perry of Florida Appeals, P.A., Tampa, and Russell G. Marlowe of Russell G. Marlowe, P.A., New Port Richey, for Appellant/Cross-Appellee.

Mark A. Neumaier, Tampa, for Appellee/Cross-Appellant.

SMITH, Judge.

James Baranowski (the Former Huband) and Lisa L. Tesh (the Former Wife) appeal the amended final judgment of dissolution of marriage dated June 17, 2024, raising a myriad of issues.[1] We write to

_____

[1] Both parties filed motions for rehearing pursuant to Florida Family Law Rule of Procedure 12.530, but to the extent they raised

address the trial court's award of alimony and child support and the concessions of error by the parties. Because competent substantial evidence supports the Former Wife's need for alimony and because the trial court did not abuse its discretion in awarding durational alimony and requiring it to be paid in one lump sum payment, we affirm the alimony award. However, because the trial court failed to consider the alimony award in computing child support and because we agree with the concessions of error by the parties regarding the award of ultimate decision making and the inconsistency with regard to the child support overpayment calculation, we reverse that portion of the final judgment awarding child support and ultimate decision making and remand for further proceedings consistent with this opinion.[2]

I

At the time of the petition, the parties had been married twenty-six years with one minor child. During the beginning of their marriage, the Former Wife worked at Chesapeake Capital. Two years into the marriage, the parties moved to Ireland and then London to further the Former Husband's career. In 2001, the parties returned to Florida, and the Former Husband began working at Citigroup in 2002, where he remained employed at the time of trial. The Former Wife was employed on an interim basis for four years upon returning to Florida and then

issues for the first time on appeal, any challenges to the trial court's failure to make findings in the final judgment are not preserved. *See Magana v. Machado*, 406 So. 3d 317, 318 (Fla. 3d DCA 2025) ("[T]o the extent Former Husband claims the trial court failed to make requisite factual findings in the final judgment, it has not been properly preserved because Former Husband failed to file a motion for rehearing in the trial court.").

[2] We affirm the final judgment in all other respects without comment.

2

took a job with UKG, where she remained employed for eighteen years prior to trial. Her employment at UKG was part-time from 2009, after the parties' son was born, until 2021 when she returned to full-time status.

The parties had accumulated over five million dollars in assets as of their date of separation. During the marriage, they maintained separate bank accounts and one joint bank account, contributing their proportionate share of their income to the joint bank account to pay for household expenses. The Former Husband contributed $5,000 per month, and the Former Wife contributed $2,000 per month. The Former Wife, however, testified that those contributions were not always sufficient to cover the parties' joint expenses and resulted in the parties making additional contributions. On the other hand, the Former Husband testified that the parties' expenses were always covered by the $7,000 joint contribution.

In 2021, the parties' taxable income was $367,070; they owed $15,869 in taxes on this amount (after withholds and credits), which they paid from their joint account. The parties separated on June 20, 2022, and thereafter filed separate tax returns. In 2022, the Former Husband had a gross income of $191,738, while the Former Wife's gross income was a little over half of that amount—$87,233. In 2023, the parties' W-2s reflected the Former Husband's income as $224,355 and the Former Wife's income as $119,512. The parties' financial affidavits and testimony indicated that the Former Wife had a monthly gross taxable income of $10,640, while the Former Husband's monthly gross income was $20,998 at the time of trial.

The Former Wife testified that the Former Husband stopped contributing to the household in February 2022, even though he

remained living in the marital home until June 2022. The Former Husband also did not contribute any monies to the health care expenses of the child or the health savings account (HSA) that benefited not only the Former Wife and child, but also the Former Husband. The Former Wife expended $13,000 for the child's extracurricular and medical expenses.

In November 2023, the trial court ordered the Former Husband to pay temporary child support and arrears at $1,500 per month. Pursuant to the amended final judgment, the trial court awarded child support at a lesser amount of $1,344, retroactive to the date of separation, taking into account an overage paid by the Former Husband. The court ordered child support to continue until the child reaches the age of majority. In addition, the amended final judgment awarded the Former Wife lump sum durational alimony and granted the Former Wife ultimate decision making authority.

## II

A trial court's award of alimony is subject to an abuse of discretion standard of review. *Nousari v. Nousari*, 94 So. 3d 704, 705 (Fla. 4th DCA 2012); *see also Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) ("If reasonable [persons] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion."). We review the trial court's factual findings for competent substantial evidence. *See Taylor v. Taylor*, 177 So. 3d 1000, 1003 (Fla. 2d DCA 2015).

When considering a request for alimony, the burden of proof rests with the requesting party to show that the requesting party has an actual need for alimony and the other party has the ability to pay alimony. *Demont v. Demont*, 67 So. 3d 1096, 1101 (Fla. 1st DCA 2011). Section

4

61.08(1)(a), Florida Statutes (2024), allows the trial court to craft the appropriate alimony support in a dissolution of marriage proceeding "as is equitable."

There are four forms of statutory alimony: temporary, bridge-the-gap, rehabilitative, and durational. *See* § 61.08(1)(a). In addition to determining the form of alimony, the trial court is required to determine how that alimony support is to be paid. *See* § 61.08(1)(b). Subsections (a) and (b) of the statute give the trial court discretion to award periodic or lump sum payments. § 61.08(1)(a)-(b) ("In an award of alimony, the court may order periodic or lump sum payments"; "[t]he court may award a combination of forms of alimony or forms of payment, including lump sum payments, to provide greater economic assistance in order to allow the obligee to achieve self-support."). "By definition, . . . lump sum alimony establishes a fixed monetary obligation that vests immediately, is nonmodifiable, and does not terminate when the payee remarries or when the payor dies." *Pipitone v. Pipitone*, 23 So. 3d 131, 137 (Fla. 2d DCA 2009). Whatever type of alimony and form of payment the trial court awards, the trial court must make written findings regarding the basis of such award. § 61.08(1)(b).

In this case, the Former Husband appeals the award of alimony on the basis that the trial court erred in determining that the Former Wife had an actual need for alimony. Specifically, the Former Husband argues that the trial court erroneously relied upon the Former Wife's postseparation lifestyle and allowed the Former Wife to double count her $1,290 in child expenses for purposes of not only alimony but also child support. He argues that the trial court should have additionally reduced the Former Wife's need by $692 per month, the amount she contributed

5

to her HSA, which the Former Husband claims is an investment savings account.

A.    Need and Ability to Pay

The first inquiry is to determine whether the Former Wife has an actual need for alimony and whether the Former Husband has the ability to pay the alimony. *See Taylor*, 177 So. 3d at 1003 ("[I]n determining whether to award alimony or maintenance, the court shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance." (quoting § 61.08(2))). The Former Husband does not appeal the trial court's findings regarding his ability to pay the alimony, and so we limit our review to whether the trial court's findings related to the Former Wife's <u>need</u> for alimony are supported by competent substantial evidence.

While the statute provides guidance regarding the factors the trial court must consider in determining the amount of alimony to be awarded, the statute does not include factors for the trial court to consider in determining whether one party has a need and the other party has the ability to pay. *See* § 61.08(2)(a). For that determination, a trial court must look to the factors laid out by the Florida Supreme Court in *Canakaris*, 382 So. 2d at 1200 ("In considering the appropriate criteria for the award of the different types of alimony, it is important that appellate courts avoid establishing inflexible rules that make the achievement of equity between the parties difficult, if not impossible."). The parties' standard of living during the marriage is only one of the criteria to be considered in determining whether alimony should be awarded. *Id.* at 1201-02 (providing that other criteria establishing "need include the parties' earning ability, age, health, education, the duration

6

of the marriage, . . . and the value of the parties' estates"); *see also Pirino v. Pirino*, 549 So. 2d 219, 220 n.2 (Fla. 5th DCA 1989) (recognizing that "two together can live cheaper than two apart").

Here, the trial court considered the factors laid out in *Canakaris* and found that the Former Wife established her need for an award of alimony.[3] *Cf. Currier v. Currier*, 99 So. 3d 996 (Fla. 5th DCA 2012) (reversing alimony award where the record failed to contain competent substantial evidence of the former husband's ability to pay). According to the Former Wife's 2024 financial affidavit, her net monthly income was $8,500. The trial court determined that the Former Wife's deficit was not the $6,000 per month she claimed but that the "deficit is more accurately listed at $1,924 per month" and removed the voluntary retirement contribution, future refinancing mortgage payment, and the overage in household monthly repairs. The Former Husband contends that the trial court stopped short and should have also removed from the Former Wife's monthly expenses the child's expenses of $1,290, as well as the HSA contributions of $692. However, contrary to the Former Husband's argument, the child's expenses of $1,290 were only listed on the Former Wife's most recent financial affidavit and were not double counted in the child support worksheet calculations. Therefore, the Former Wife's need, in that respect, is not overinflated. *Cf. Lin v. Lin*, 37 So. 3d 941, 942-43 (Fla. 2d DCA 2010) (holding that where the child's expenses have been counted in the alimony and child support award, it constituted double

---

[3] The Former Husband does not challenge the trial court's findings related to the Former Husband's financial ability to pay, arguing only that, should this court reverse, then his ability to pay will need to be recalculated. *See, e.g., Perez v. Perez*, 238 So. 3d 422, 424 (Fla. 5th DCA 2018) (requiring, on remand for specific findings on need and ability to pay alimony, that the court either make findings that the husband had the ability to pay or recalculate alimony based on the findings).

counting of the child expenses). Second, the HSA is not a savings or investment account, as argued by the Former Husband. *See Mallard v. Mallard*, 771 So. 2d 1138, 1140 (Fla. 2000) ("In awarding alimony, the court may not factor in speculative post-dissolution savings based upon a marital history of frugality."). The Former Wife testified that the HSA account was established sometime during the marriage and was set up to pay for the family's high annual deductible. The Former Wife made consistent monthly tax-free contributions to her HSA account, which pays for qualified medical expenses for the family that are not covered by her company's insurance plan.

Accordingly, the trial court's findings establishing the Former Wife's need for alimony are supported by competent substantial evidence.

B.    Lump Sum Support

The Former Husband does not challenge the form of alimony awarded by the trial court—durational[4]—but appeals the lump sum form of payment, arguing that a lump sum payment in essence circumvents section 61.08(8)(a) because a lump sum payment is nonmodifiable, whereas durational alimony terminates upon death of either party and allows for modification or termination upon a substantial change in circumstance under section 61.14. He further argues that the trial court failed to make the requisite findings of "unusual circumstances" to support the ordered lump sum payment.

Section 61.08(1)(a)-(b) grants the trial court the discretion to award lump sum alimony and section 61.08(8)(a) provides:

> Durational alimony may be awarded to provide a party with economic assistance for a set period of time. An award of

---

[4] The Former Husband successfully sought on rehearing below to amend the final judgment to provide for six years of durational alimony as opposed to eight years.

8

durational alimony terminates upon the death of either party or upon the remarriage of the obligee. The amount of an award of durational alimony may be modified or terminated based upon a substantial change in circumstances in accordance with s[ection] 61.14. Durational alimony may not be awarded following a marriage lasting less than 3 years. The length of an award of durational alimony may not be modified except under exceptional circumstances and may not exceed the length of the marriage except as set forth in this subsection.

In support of his argument that the trial court was required to make a finding that "unusual circumstances" justified the lump sum payment award, the Former Husband cites to *Coltea v. Coltea*, 856 So. 2d 1047, 1051 (Fla. 4th DCA 2003), deciding whether lump sum alimony payment was permitted when support was sought without dissolution; *Greene v. Greene*, 895 So. 2d 503, 512 (Fla. 5th DCA 2005), *receded from on other grounds by Price v. Price*, 951 So. 2d 55, 60 n.2 (Fla. 5th DCA 2007), stating that "[a]n award of lump sum alimony as support requires proof of special circumstances, where other forms of alimony are not available or appropriate"; and *Rosario v. Rosario*, 945 So. 2d 629, 632 (Fla. 4th DCA 2006), stating that unusual circumstances which require nonmodifiable award "must be something above and beyond the justifications for an award of permanent periodic alimony."

The statute imposes no requirement that the trial court make a finding of "unusual circumstances" or "special necessity" in awarding lump sum alimony. *Canakaris* controls our analysis to determine whether it was error for the trial court to award lump sum alimony. 382 So. 2d at 1201. There, the supreme court recognized that the trial courts have broad discretion in granting lump sum alimony pursuant to the general equities in the case "consistent with the statutory mandate." *Id.* (holding that to the extent that the court used the term "special equity"

9

in *Yandell v. Yandell*, 39 So. 2d 554 (Fla. 1949), it was referring to the general equities of the case). In other words, "[i]n granting lump sum alimony, the trial court should be guided by all relevant circumstances to ensure 'equity and justice between the parties.' " *Id.* (quoting § 61.08). For instance, the *Canakaris* court held that

> [a] judge may award lump sum alimony to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability of the other spouse to make such payment without substantially endangering his or her economic status. *Brown v. Brown*[, 300 So. 2d 719 (Fla. 1st DCA 1974)].

*Id.*; *see also Abbe v. Abbe*, 475 So. 2d 206, 208 (Fla. 1985) ("The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony . . . . As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme." (quoting *Canakaris*, 382 So. 2d at 1202)).

In *Borchard v. Borchard*, 730 So. 2d 748, 750-51 (Fla. 2d DCA 1999), the trial court awarded lump sum alimony to be paid at $1,000 per month, finding "after review of all statutory criteria" that "the Wife needs financial help during her transition to being a single mom." We recognized that lump sum alimony may be awarded to help one spouse adjust financially to life after marriage where the trial court's decision is "a reasoned, discretionary decision compatible with factors delineated in section 61.08(2)."[5] *Id.* at 749.

---

[5] *Borchard* considered the 1997 version of section 61.08, *see* 730 So. 2d at 749, and subsection (2) of the 1997 version delineated the factors that now appear in subsection (3) of section 61.08; *see also* ch. 2023-315, § 1, Laws of Fla. (renumbering and making substantial

In this case the trial court considered the statutory factors and found:

> [T]he Husband vastly out earns the Wife and this is clearly based on the Husband's career focus during the marriage and the Wife's sacrifice of working full time for [sic] the parties agreement for her to be more available for the Child. The Wife is clearly capable and intelligent but the gap of experience on her resume explains the pay gap between them. She is currently working full time and making advancements.

As in *Borchard*, and based upon the findings of the trial court, "we conclude that it was not an unreasonable act of discretion on the part of the trial judge" to award lump sum alimony based upon the facts of this case to close the pay gap between the parties. 730 So. 2d at 753.

III

When alimony is sought, child support should follow the determination of alimony because the income of the parties must be adjusted to include the award of alimony. *See Christensen v. Christensen*, 147 So. 3d 118, 119 (Fla. 1st DCA 2014). We note that the child support obligation award in the amended final judgment preceded the alimony award calculation, which likely led to the omission of the alimony award in the child support calculation and, ultimately, led to an error.

Section 61.30(2)(a)9 specifically provides that, for purposes of child support, the determination of a party's income shall include any spousal support awarded in the marriage before the court. On remand, when determining the parties' income for purposes of computing child support, the trial court shall consider the alimony awarded. *See Martinez v. Martinez*, 911 So. 2d 288, 289 (Fla. 2d DCA 2005) (stating that when

revisions to section 61.08). *Compare* § 61.08(2), Fla. Stat. (1997), *with* § 61.08(3), Fla. Stat. (2024).

11

adding alimony to wife's income for purposes of computing child support, alimony should be calculated to reflect net amount—less the federal income taxes paid on the alimony award). The court shall indicate the amount of child support ordered once credit for the overpayment of prior child support is recouped.

## IV

The parties agree to two concessions of error by the trial court: ultimate decision making authority was not tried and the amended final judgment contains an internal inconsistency regarding the continuing child support obligation. While we are not required to accept the parties' concessions of error, *see, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Bennett*, 291 So. 3d 605, 606 (Fla. 2d DCA 2020) ("[W]e decline to accept the concession of error."), in this case, we agree with the concessions and reverse as to these issues. On remand, the trial court shall conduct a new hearing on the decision making authority issue and recalculate child support consistent with this opinion to account for any overage and adjust the ongoing child support amount and time period after the overage amount is caught up, until the child reaches the age of majority.

## V

In sum, we find no error in the award of lump-sum durational alimony to the Former Wife, who established need by competent substantial evidence. However, because the child support obligation failed to consider the alimony award and because the child support obligation did not continue after the overage payment was caught up, we reverse the child support award and remand for further proceedings. We also reverse the award of ultimate decision making authority to the Former Wife and remand for the trial court to conduct a hearing on that issue.

12

Affirmed in part, reversed in part, and remanded with instructions.

SILBERMAN and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.